

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

**ENTERED**
**01/29/2014**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **DAVID LEE REEVES, JR.** | § | **Case No. 10-34961-H4-7** |
| **HOPE ANN REEVES** | § | |
| | § | **Chapter 7** |
| Debtors. | § | |

## MEMORANDUM OPINION REGARDING TRUSTEE'S OBJECTION TO EXEMPTIONS AND MOTION TO COMPEL TURNOVER AND FILING OF STATEMENT OF FINANCIAL AFFAIRS
[Doc. No. 175]

### I. INTRODUCTION

This case is about a Chapter 7 Trustee who is doing her job well and a Debtors' attorney who is not. Additionally, this is a case about debtors who thumb their nose at the bankruptcy system. At issue is how this Court should rule on the Trustee's Objection to Exemptions and Motion to Compel Turnover and Filing of Statement of Financial Affairs (the Objection/Motion).[1] For the reasons set forth herein, the Court sustains the Objection and grants the Motion.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into by Federal Rules of Bankruptcy Procedure 7052 and 9014.[2] To the extent that any Finding of Fact is construed to be a Conclusions of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact,

---

[1] When referenced separately, the Objection to Exemptions will hereinafter be referred to as "the Objection," and the Motion to Compel Turnover and Filing of Statement of Financial Affairs will hereinafter be referred to as "the Motion."

[2] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure. Any reference to "Bankruptcy Local Rule" or "BLR" refers to the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas.

it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

The relevant facts—as established by the pleadings, the admitted exhibits, the Trustee's testimony, and the stipulations of the Debtors' counsel—are as follows:

### A. Procedural Background of the Debtors' Chapter 13 Case and Their Conversion to a Chapter 7 Case

1. David Lee Reeves, Jr. (Mr. Reeves) and Hope Ann Reeves (Ms. Reeves) (collectively, the Debtors) filed their voluntary Chapter 13 petition on June 14, 2010 (the Petition Date). [Doc. No. 1, pp. 1–7].

2. On this same day, the Debtors also filed their Schedules A, B, C, D, E, F, G, H, I, and J (the Original Schedules), a Summary of the Schedules, and their Statement of Financial Affairs (the Original SOFA). [*Id.* at pp. 8–29 & 32–37; Trustee's Ex. B, pp. 1–6].

3. The Debtors filed their proposed Chapter 13 plan on June 18, 2010[3] [Doc. No. 13]; they subsequently amended their proposed Chapter 13 plan five times—on July 19, 2010 [Doc. No. 22], August 2, 2010 [Doc. No. 31], August 23, 2010 [Doc. No. 37], September 24, 2010 [Doc. No. 45], and October 13, 2010 [Doc. No. 50]. On October 18, 2010, this Court confirmed the amended Chapter 13 plan that the Debtors filed on October 13, 2010 [Doc. No. 50] (the Confirmed Plan). [Doc. No.51].

4. On July 22, 2010, the Debtors filed their proposed Order for Withholding of Wages of Chapter 13 Debtor [Doc. No. 26]. On July 23, 2010, this Court signed the Debtors' proposed Order for Withholding of Wages of the Chapter 13 Debtor, directing the United

---

[3] The Court points out that the Debtors filed this proposed Chapter 13 plan as an "Amended Chapter 13 Plan" [*see* Doc. No. 13, p. 1]; however, this particular proposed Chapter 13 plan—filed on June 18, 2010—is the first Chapter 13 plan that the Debtors filed and thus, it was not an amended plan.

States Department of Homeland Security—the employer of one of the Debtors (i.e., Ms. Reeves)—to remit a specific portion of her wages directly to the Chapter 13 Trustee until it receives an order from this Court directing the employer to cease making these payments (the Wage Withholding Order). [Doc. No. 27].

5. On August 23, 2010, the Debtors filed an Emergency Motion to Temporarily Suspend the Wage Withholding Order [Doc. No. 36]; and, on August 26, 2010, this Court granted this emergency motion, and signed an order suspending the withholding of Ms. Reeves' wages until October 31, 2010 [Doc. No. 39].

6. On September 3, 2010, the Chapter 13 Trustee filed a Motion to Dismiss or Convert, requesting that this Court dismiss or convert the Debtors' Chapter 13 case because the Debtors: (a) failed to make payments pursuant to § 1326(a)(1); (b) caused unreasonable delay that was prejudicial to their creditors; (c) failed to amend Schedule I to reflect Ms. Reeves' new income and employer; and (d) failed to provide a copy of their 2009 tax return. [Doc. No. 42].

7. On October 18, 2010, this Court signed an Order Withdrawing Motion to Dismiss, which (a) authorized the Chapter 13 Trustee to withdraw his motion to dismiss, conditioned on Ms. Reeves agreeing to entry of another wage order; and (b) ordered Ms. Reeves to provide the information required by the Chapter 13 Trustee for entry of a wage order within 7 days of the entry of the Order. [Doc. No. 52].

8. On January 13, 2011, the Debtors filed a Motion to Sign Amended Wage Order; attached thereto was their proposed Amended Wage Withholding Order. [Doc. No. 66]. On January 20, 2011, this Court granted the Debtors' Motion to Sign Amended Wage Order and signed an Amended Order for Withholding of Wages of Chapter 13 Debtor (the

Amended Wage Withholding Order). [Doc. No. 67]. The Amended Wage Withholding Order expressly set forth that: (a) the Wage Withholding Order, which was entered on the docket on July 23, 2010 [Finding of Fact No. 4], was vacated; and (b) Ms. Reeves' current employer—US Customs & Border Protection—was ordered to remit a specific portion of her wages directly to the Chapter 13 Trustee pursuant to the Amended Wage Withholding Order. [*Id.*].

9.  On July 13, 2012, the Debtors filed an Amended Order to Employer to Pay Chapter 13 Trustee [Doc. No. 87]; and, on the same day, this Court signed the order (the Second Amended Wage Withholding Order), directing Ms. Reeves' employer (i.e., US Customs & Border Protection) to remit a portion of her wages directly to the Chapter 13 Trustee until further order from the Court [Doc. No. 88].

10. The Debtors filed a Notice of Voluntary Conversion from Chapter 13 to Chapter 7 on February 11, 2013 (the Conversion Date). [Doc. No. 92].

11. On the Conversion Date, the Debtors filed their Amended Schedules B, C, F, I and J (the 2/11 Amended Schedules)[4] [Doc. Nos. 93, 93-1, 93-2 & 94; Trustee's Ex. B, pp. 7–14], and their Statement of Intent [Doc. No. 93-3]. The 2/11 Amended Schedule F set forth additional creditors and debts incurred during the Chapter 13 case; the additional scheduled debts set forth in this Schedule totaled $506,395.32 and were unsecured. *See* [Doc. No. 93-1].

---

[4] The Court notes that the Debtors failed to comply with Bankruptcy Local Rule 1009-1(b), which requires amendments to schedules to be "marked to identify added, deleted or changed information." While the Debtors "circled" newly added information on the 2/11 Amended Schedules, they did not mark the information that they deleted from the Original Schedules. [*Compare* Doc. No. 1 *with* Doc. No. 93]. For example, on the Original Schedule B, the Debtors identified Capital One Bank, but they deleted "Capital One Bank" on the 2/11 Amended Schedule B without identifying this deletion. [*Compare* Doc. No. 1 *with* Doc. No. 93].

12. On February 13, 2013, Allison Byman (the Trustee) was duly appointed as the Chapter 7 Trustee, and she continues to serve as the Trustee up to this date.

13. On March 1, 2013, the Chapter 13 Trustee, who administered the Debtors' case prior to conversion, filed the Chapter 13 Standing Trustee's Final Report and Account (the Final Report).[5]   [Trustee's Ex. D; Doc. No. 97].   There was no property listed in the Final Report.   [Doc. No. 175, p. 4, ¶ 8; Tape Recording, November 19, 2013 Hearing at 1:45:40–1:45:45 p.m.; *see* Trustee's Ex. D; *see* Doc. No. 97].

14. The Final Report reflects that: (1) while the Debtors were in their Chapter 13, they paid a total of $82,999.15 to the Chapter 13 Trustee; and (2) upon conversion, the Chapter 13 Trustee sent $4,625.49 to the Debtors (the Chapter 13 Refund), representing funds that the Debtors had paid to the Chapter 13 Trustee pursuant to the Confirmed Plan but which the Chapter 13 Trustee had not distributed to creditors by the Conversion Date. [Trustee's Ex. D, p. 3; Doc. No. 97, p. 2].

15. The initial post-conversion meeting of creditors was held on March 21, 2013 at which the Debtors did appear, but the Trustee continued the meeting of creditors to April 4, 2013. [Doc. No. 123[6], p. 3, ¶¶ 9–10]; *see* [Adv. Doc. No. 1[7], p. 2, ¶ 8 & Adv. Doc. No. 10[8], p.

---

[5] When a Chapter 13 case "has been fully administered, the chapter 13 trustee is required to prepare and file a final report and accounting, like that required of a liquidation prior to the closing of a chapter 7 case" under § 704(a)(9) in order for the case to be closed. 8 *Collier on Bankruptcy*, ¶ 1302.03[1][g] at 1302-15 (16th ed. 2013) (emphasis added) (internal citations omitted); *see also* 6 *Collier on Bankruptcy*, ¶ 704.12 at 704-29 (16th ed. 2013) (stating that § 704(a)(9)—which "requires the trustee to make a final report and to file a final account of the administration of the estate with the court and with the United States trustee"—also applies to trustees in chapter 13 cases) (emphasis added).   "The trustee must file an itemized statement of property received and disposed of.   The purpose of all expenditures must likewise be stated . . . . The trustee's account should detail the relevant dollar amounts, and the report should be a running summary of the details of administration." *Id.*

[6] Doc. No. 123 is the Trustee's Motion Pursuant to § 348(f)(2) to Establish Property of the Estate as of the Date of Conversion to Chapter 7 (the § 348(f)(2) Motion) [*See* Finding of Fact No. 22].   The Debtors did not file a response to the § 348(f)(2) Motion in the first instance.   [*Id.*].   Therefore, this Court accepts the Trustee's allegations in the § 348 (f)(2) Motion as true.   Moreover, the Debtors' testimony at the hearing on the § 348(f)(2) Motion confirmed the allegations set forth in the § 348(f)(2) Motion. *See* [Findings of Fact Nos. 26 & 27].

1, ¶ 1].[9]  After the March 21, 2013 meeting of creditors, the *"Debtor's attorney [was] to amend within ten (10) days, Schedules "B", "C" & "J"; [and] provide [a] copy of [the Debtors'] 2012 Tax Return to Trustee.*" *See* [Docket sheet entry for 03/22/2013 regarding the Meeting of Creditors] (emphasis in original).

16. On March 22, 2013, the Debtors filed Amended Schedules B, C, I, J, and G (the 3/22 Amended Schedules).[10]  [Doc. Nos. 100, 101, 102, 103 & 104; Trustee's Ex. B, pp. 15–21].

17. On April 4, 2013, one of the Debtors (i.e., Mr. Reeves) appeared at the continued meeting of creditors, but the other Debtor (i.e., Ms.sdjk Reeves) failed to appear. [Doc. No. 123, p. 3, ¶ 10]; *see* [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1, ¶ 1].   Mr. Reeves was sworn and provided additional testimony. [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1 ¶ 1]; *see* [Findings of Fact Nos. 29–34] (discussing Mr. Reeves' testimony at the April 4, 2013 meeting of creditors). "The Trustee continued the meeting of creditors for a second time to May 2, 2013, to allow for production of business records, the 2012 tax return[11] and information regarding payment of an insurance claim for damaged

---

[7] Adv. Doc. No. 1 is the Trustee's Complaint to Bar Discharge of the Debtors (the Complaint), which she filed on August 19, 2013. [*See* Adv. Doc. No. 1].

[8] Adv. Doc. No. 10 is the Debtors' Answer to Complaint of Chapter 7 Trustee (the Answer), which they filed on September 23, 2013. [*See* Adv. Doc. No. 10].

[9] Whenever Adv. Doc. No. 1 and Adv. Doc. No. 10 are cited simultaneously in this Memorandum Opinion, this means that the Debtors, in the Answer, admitted the Trustee's allegations in the Complaint.

[10] The Court notes that the Debtors, once again, failed to comply with Bankruptcy Local Rule 1009-1(b) when they filed the 3/22 Amended Schedule B. [*See* footnote number 4]. Specifically, the Debtors identified a "2008 GMC Sierra" on the 2/11 Amended Schedule B, but they deleted this on the 3/22 Amended Schedule B without identifying this deletion. [*Compare* Doc. No. 93, p. 4 *with* Doc. No. 100].

[11] The Court notes that the Debtors' attorney was supposed to provide a copy of the Debtors' 2012 tax return to the Trustee within 10 days after the meeting of creditors on March 21, 2013. [Finding of Fact No. 15]. Yet, the Debtors' attorney had still not provided such information to the Trustee at the continued meeting of creditors on April 4, 2013, forcing the Trustee to, once again, continue the meeting of creditors to May 2, 2013.

goods." [Doc. No. 123, p. 3, ¶ 10]; *see* [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1, ¶ 1].

18. On April 12, 2013, the Debtors, through their attorney, filed a skeletal Motion to Dismiss this Chapter 7 case (the First Motion to Dismiss) because "the Chapter 7 Trustee and the Office Of the United States Trustee For The Southern District of Texas have aggressively pursued (via requests for documents and the 341 meeting interrogations), that Debtors cannot cope with the additional strain of enduring further interrogations."[12]  [Doc. No. 110, pp. 1–2, ¶ 3].

19. On April 17, 2013, this Court signed an order denying the First Motion to Dismiss due to the failure of the Debtors' counsel to: (a) give notice to their creditors, the Chapter 7 Trustee, and parties requesting notice pursuant to Bankruptcy Local Rule 9013-1; and (b) file a proper Certificate of Service.  [Doc. No. 111].

20. On April 25, 2013, the Debtors, through their attorney, filed a second Motion to Dismiss this Chapter 7 case (the Second Motion to Dismiss), identical to the First Motion to Dismiss, but this time, the Second Motion to Dismiss complied with Bankruptcy Local Rule 9013-1.  [Doc. No. 115].  Several creditors and the Trustee filed responses opposing the Second Motion to Dismiss.  [*See* Doc. Nos. 116, 119, 121 & 122].

21. On May 2, 2013, a continued meeting of creditors was held, at which the Debtors failed to appear.  Counsel for the Debtors "indicated that he was sick and unable to attend, and that his clients had no intention of attending the continued meeting."[13] [Doc. No. 123,

---

[12] The Court notes that this sentence is grammatically incorrect, but this is a verbatim quote from the First Motion to Dismiss.

[13] The Court notes that pursuant to Bankruptcy Local Rule 2003-1(a) and a form entitled "Chapter 7 Debtors Duties and Responsibilities"—which is available on the website for the Bankruptcy Court of the Southern District of Texas—the Debtors were required to attend all meetings of creditors "<u>unless excused by the Court from attendance</u>." BLR 2003-1(a) (emphasis added); Chapter 7 Debtors Duties and Responsibilities Form, p. 2, ¶ 16, *available at*

p. 3, ¶ 10]; *see* [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1, ¶ 1]. Therefore, the Trustee, once again, was forced to continue the meeting of creditors to May 16, 2013. [Doc. No. 123, p. 3, ¶ 10]; *see* [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1, ¶ 1].

22. On May 6, 2013, the Trustee filed a Motion Pursuant to § 348(f)(2) to Establish Property of the Estate as of the Date of Conversion to Chapter 7 (the § 348(f)(2) Motion). [Doc. No. 123]. In the § 348(f)(2) Motion, the Trustee asserted that the Debtors' bad faith conduct was such that the Conversion Date—not the Petition Date—should be the relevant date for determining what property constitutes property of the estate.[14] [*Id.*]. The Debtors did not file a response to the § 348(f)(2) Motion.[15]

23. On May 16, 2013, a continued meeting of creditors was held, at which both of the Debtors failed to appear; thus, the Trustee, once again, continued the meeting of creditors

---

http://www.txs.uscourts.gov/bankruptcy/rulesformsproc. Moreover, another form available on the same website, entitled "Procedures for Obtaining Relief from Requirement to Attend § 341 Meeting of Creditors," sets forth the procedures for which the Debtors can seek to be excused from attending the mandatory meetings of creditors. *See* Procedures for Obtaining Relief from Requirement to Attend § 341 Meeting of Creditors Form, *available at* http://www.txs.uscourts.gov/bankruptcy/rulesformsproc. In Section V(C)(2), the Court subsequently discusses the Debtors' and their counsel's repeated failure to attend meetings of creditors and their failure to seek to be excused from attending these meetings. But, with respect to this particular meeting of creditors, held on May 2, 2013, the Court finds that although counsel for the Debtors "indicated that he was sick and unable to attend, and that his clients had no intention of attending the continued meeting," the Debtors <u>and</u> their counsel should have sought to be excused from attending this meeting by following the specific procedures in the above-referenced Procedures Form.

[14] Normally, what constitutes property of the estate is determined on the date the petition was filed. *See* § 541(a)(1) ("Such estate is comprised of . . . all legal or equitable interests of the debtor in property **as of the commencement of the case.**") (emphasis added).; *see, e.g., W. v. Hsu (In re Advanced Modular Power Sys., Inc.)*, 413 B.R. 643, 670 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. W*, Civil Action No. H–09–3131, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) ("[T]he property of the estate includes the intangible and tangible property held by the Debtor as of the Petition Date . . . ."). However, if a debtor converts a case from Chapter 13 to Chapter 7 <u>in bad faith,</u> then pursuant to § 348(f)(2), the property of the estate is determined <u>as of the date of conversion</u>. *See* § 348(f)(2); *see, e.g., In re Fonke*, 321 B.R. 199, 208 (Bankr. S.D. Tex. 2005) ("Based on the plain language of § 348(f)(2), a debtor who converts in bad faith is punished by enlarging the property of the estate to include the debtor's postpetition after acquired property.").

[15] The Court notes that the Debtors failed to file a response to the § 348(f)(2) Motion, even though the § 348(f)(2) Motion included immediately below the title, in pertinent part, the following language that is required by Bankruptcy Local Rule 9013-1(b): "*IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.*" [Doc. No. 123, p. 1] (emphasis added); *see* BLR 9013-1(b)].

to June 11, 2013. [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1, ¶ 1]. The Debtors also failed to appear at the June 11, 2013 continued meeting of creditors; thus, the Trustee, once again, continued the meeting of creditors to July 2, 2013. [Adv. Doc. No. 1, p. 2, ¶ 9 & Adv. Doc. No. 10, p. 1, ¶ 1].

24. On June 27, 2013, this Court held a hearing on the Second Motion to Dismiss. The Debtors once again failed to appear. [Doc. No. 144]. On June 28, 2013, the Court issued an order denying the Second Motion to Dismiss and ordering the Debtors to appear, give testimony, and produce certain documents at the continued meeting of creditors. [Doc. No. 147, pp. 1–2]. The order also expressly set forth that if the Debtors did not appear at any subsequently scheduled meeting of creditors, then the Court would issue a bench warrant for their arrest. [*Id.* at p. 2].

25. On July 2, 2013, a continued meeting of creditors was held, at which neither the Debtors nor their counsel appeared. *See* [Docket sheet entry for 07/10/2013 regarding the Meeting of Creditors]. The Trustee continued the meeting of creditors to July 11, 2013. [*Id.*]. At the July 11, 2013 continued meeting of creditors, the Debtors appeared, but even though they did appear, the meeting was continued to August 1, 2013 because the Debtors still needed to provide additional documentation to the Trustee. *See* [Docket sheet entry for 07/23/2013 regarding the Meeting of Creditors].

26. On June 27, 2013, July 11, 2013, and August 6, 2013, this Court held hearings on the § 348(f)(2) Motion, during which testimony was adduced and exhibits were introduced (the Hearing on the § 348(f)(2) Motion). Ms. Reeves testified on June 27, 2013, and Mr.

Reeves testified on July 11, 2013. After considering the testimony adduced and the exhibits that were introduced, this Court orally granted the § 348(f)(2) Motion.[16]

27. On August 9, 2013, this Court issued an order granting the § 348(f)(2) Motion (the August 9, 2013 Order). [Doc. No. 155]. The August 9, 2013 Order expressly set forth that the Debtors' case was converted from Chapter 13 to Chapter 7 in bad faith[17] and that property of the Debtors' estate would be determined as of the Conversion Date (i.e., February 11, 2013) and not as of the Petition Date (i.e., June 14, 2010). [*Id.*].

28. On September 12, 2013, a continued meeting of creditors was held. The Debtors appeared, and the Trustee was finally able to conclude the meeting of creditors, the first one of which was held approximately six months earlier [*see* Finding of Fact No. 15].

**B.     A Description of the Debtors' Bad Faith Conduct That Resulted in the Granting of the § 348(f)(2) Motion**

29. Prior to the April 4, 2013 continued meeting of creditors, one of the Debtors (i.e., Mr. Reeves) provided the Trustee with bank statements for the 90 days prior to the Conversion Date. [Doc. No. 123, p. 4, ¶ 17]. The statements for Mr. Reeves' personal account, which he used for his business, indicate that he received a wire transfer in the amount of $46,930.50 on February 8, 2013. [*Id.*]. On the same day, Mr. Reeves requested a cashier's check in the amount of $30,010.00. [*Id.*].

30. At the April 4, 2013 continued meeting of creditors [Finding of Fact No. 17], Mr. Reeves was sworn and provided testimony regarding his business, Tubular Machine Products

---

[16] This Court's Findings of Facts and Conclusions of Law made in open court at the conclusion of the Hearing on the § 348(f)(2) Motion on August 6, 2013 are incorporated as if fully set forth herein. *See, e.g., Hoffman v. Burke (In re Burke)*, 374 B.R. 781, 783 (Bankr. D. Colo. 2007), *aff'd*, Bankr. No. 98–2466–MER, Civil Action No. 07–cv–01947–AP, 2008 WL 4452133 (D. Colo. Sept. 29, 2008) ("To the degree and extent this Court's previous findings of fact, conclusions of law, decisions and opinions, as designated, are relevant to this ruling, the Court adopts and incorporates them herein . . . .").

[17] *See* [Findings of Fact Nos. 29–37 in Section II(B)] (discussing specific examples of the Debtors' bad faith conduct).

(TMP). [Doc. No. 123, p. 3, ¶¶ 10 & 13; Adv. Doc. No. 1, p. 3, ¶ 11 & Adv. Doc. No. 10, p. 1, ¶ 2]. Specifically, Mr. Reeves testified that he used the cashier's check in the amount of $30,010.00 to pay Jim Roy, a creditor of TMP. [*Id.* at p. 4, ¶ 17].

31. Mr. Reeves also testified that he: (a) started his business after filing the Chapter 13 case, but before confirmation of the proposed Chapter 13 Plan[18]; (b) failed to notify the Chapter 13 Trustee about his new business; (c) did not have authority from this Court or the Chapter 13 Trustee to operate his business; (d) received monthly income from this business but never sought to modify the Confirmed Plan to increase the recovery to the Debtors' creditors; (e) converted his case from Chapter 13 to Chapter 7 to avoid judgments that had been filed related to his business debts; and (f) expected a discharge for the additional $506,395.32 in debts that he (through his proprietorship) incurred during the Chapter 13 case [*see* Finding of Fact No. 11]. [*Id.* at pp. 3–4, ¶ 13; Adv. Doc. No. 1, p. 3, ¶ 11 & Adv. Doc. No. 10, p. 1, ¶ 2].

32. Mr. Reeves also testified that he did not maintain books or records for his business and that he stopped operating his business in either January or February of 2013. [*Id.* at p. 4, ¶ 16; Adv. Doc. No. 1, p. 3, ¶ 12 & Adv. Doc. No. 10, p. 1, ¶ 3]. Upon the Trustee's request for the turnover of invoices, Mr. Reeves only turned over drafts, correspondence, and handwritten notes regarding sales. [Adv. Doc. No. 1, p. 3, ¶ 12; Adv. Doc. No. 10, p. 1, ¶ 3].

---

[18] However, at the Hearing on the § 348(f)(2) Motion, Mr. Reeves testified that he opened TMP around September or October of 2011, which is approximately one year <u>after</u> the proposed Chapter 13 Plan was confirmed. [Tape Recording, July 11, 2013 Hearing at 1:52:17–1:52:27 p.m.]. Moreover, Ms. Reeves testified that Mr. Reeves was working for an employer as of the Petition Date, but approximately a year and four months later (i.e., around September or October 2011), he quit his job and started his own business (i.e., TMP). [Tape Recording, June 27, 2013 Hearing at 1:15:36–1:16:46 p.m.]. Yet, Mr. Reeves testified at the Hearing on the § 348(f)(2) Motion that he was unemployed and seeking employment as of the Petition Date. [Tape Recording, July 11, 2013 Hearing at 1:50:06–1:50:11 p.m.]. While the testimony of Mr. Reeves and Ms. Reeves is contradictory, there is no question that at some point after the Petition Date, Mr. Reeves surreptitiously started his own business.

33. Mr. Reeves also testified that his benefits from the Veteran's Administration (VA Benefits) increased in September of 2011, and at the time of the increase, or soon thereafter, he received a retroactive lump sum payment—approximately $10,000 to $12,000—to bring his benefits current (the Retroactive Payment). [Doc. No. 123, p. 4, ¶ 18]. Despite the increase in Mr. Reeves' VA Benefits and the Retroactive Payment, the Debtors did not disclose this information or modify the Confirmed Plan to make greater distributions to their creditors. [*Id.*, pp. 4–5, ¶ 18]. Mr. Reeves further testified at the Hearing on the § 348(f)(2) Motion that he did not notify the Chapter 13 Trustee of the Retroactive Payment because the Debtors believed it was exempt from bankruptcy. [Tape Recording, July 11, 2013 Hearing at 2:13:02–2:13:09 p.m.]. Rather, the Debtors used the Retroactive Payment to purchase a 2010 Dodge 2500 Truck (the 2010 Dodge Truck). [Doc. No. 123, pp. 4–5, ¶ 18].

34. At the meeting of creditors and at the Hearing on the § 348(f)(2) Motion, Mr. Reeves testified that he discarded the computer he used for his business operations in or around September 2012, during the pendency of the Debtors' Chapter 13 case. [Adv. Doc. No. 1, p. 3, ¶ 13].

35. At the Hearing on the § 348(f)(2) Motion, Mr. Reeves testified that he had acquired several vehicles during his Chapter 13 case, but he could not describe the disposition of each vehicle. [Adv. Doc. No. 1, p. 4, ¶ 14].[19] Mr. Reeves also testified that over $800,000 flowed through his business account in the year 2012, but he could not explain how such funds were spent, other than on expenses related to entertainment or the

---

[19] In the Answer, the Debtors deny the Trustee's allegation and contend that Mr. Reeves "could articulate the disposition of [these] vehicles." [Adv. Doc. 10, p. 1, ¶ 4]. However, the Court notes that the Debtors' contention is wholly inaccurate because Mr. Reeves was not, in fact, able to articulate the disposition of these vehicles at the Hearing on the § 348(f)(2) Motion. The Debtors' denial in the Answer is in direct conflict with Mr. Reeves' prior testimony under oath.

purchases of vehicles to transport products.  [*Id.*].[20]  He could not provide evidence of any payment made for products purchased for customers or on behalf of customers. [Adv. Doc. No. 1, p. 4, ¶ 14].[21]

36. Also, at the Hearing on the § 348(f)(2) Motion, Mr. Reeves identified an unpaid receivable due to him in the amount of at least $20,000.00; this receivable constitutes property of the estate and, if collectible, the funds would be distributed to the Debtors' creditors.  [Adv. Doc. No. 1, p. 4, ¶ 15].  Mr. Reeves testified that he paid the account debtor in cash to deliver products to his customer; the customer never received the product; and he (i.e., Mr. Reeves) never received the return of the funds.  [*Id.*].  Mr. Reeves indicated that he would turn over to the Trustee information regarding the account debtor, but he has never provided any such information.  [*Id.*].  Mr. Reeves further testified that he was not familiar with the account debtor at the time of the transaction, which took place at his home and involved the exchange of cash obtained from the Debtors' Woodforest Bank Account for the purchase and delivery of the products. [*Id.*].

37. At the Hearing on the § 348(f)(2) Motion on June 27, 2013, the other debtor—Ms. Reeves—repeatedly claimed to have no knowledge or familiarity with Mr. Reeves' business. [Adv. Doc. No. 1, p. 4, ¶ 16].  Specifically, she testified that although she was

---

[20] In the Answer, the Debtors deny this specific allegation by stating the following: "Debtors deny that they did not explain where $800,000 that flowed through Debtor's business went." [Adv. Doc. No. 10, p. 1, ¶ 4].  The Court notes that the Debtors' assertion is inaccurate because Mr. Reeves was not able to explain the whereabouts of the $800,000 that flowed through TMP. *See* [Tape Recording, July 11, 2013Hearing at 2:28:21–2:31:29].  Once again, the Debtors' denial in the Answer is in direct conflict with Mr. Reeves' prior testimony under oath. *See* [footnote number 17].

[21] In the Answer, the Debtors assert that Mr. Reeves "was able to provide testimony concerning payment of products purchased for customers or on behalf of customers." [Doc. No. 10, p. 1, ¶ 4].  The Court notes that this assertion is also inaccurate because Mr. Reeves did not provide such testimony. *See* [Tape Recording, July 11, 2013Hearing at 2:28:21–2:31:29].  Once again, the Debtors' denial in the Answer is in direct conflict with Mr. Reeves' prior testimony under oath. [*See* 12 n.19, 13 n.20].

aware of TMP, she did not know anything about the business because she was "not allowed to be involved in anything that [Mr. Reeves] does because of her job." [Tape Recording, June 27, 2013 Hearing at 1:12:35–1:13:25 p.m.].   Ms. Reeves could not explain where the $800,000 that flowed through his business went nor could she explain the existence or absence of his business records.  [Adv. Doc. No. 1, p. 4, ¶ 16].  Ms. Reeves did not notify the Chapter 13 Trustee or this Court of Mr. Reeves' new business or of the increased income during the operation of Mr. Reeves' business. [*Id.*; Tape Recording, June 27, 2013 Hearing at 1:17:14–1:17:23 p.m.].

**C.    The Trustee's Requests for: (1) Amended Schedules that Reflect Property of the Estate as of the Conversion Date; and (2) an Amended SOFA[22]**

38. On September 24, 2013—approximately six weeks after this Court granted the § 348(f)(2) Motion—the Trustee's counsel e-mailed the Debtors' counsel the following request:

> In light of [the August 9, 2013 Order], which stated that the Debtors' estate would be determined as of [the Conversion Date], the Trustee requests that the Debtors file newly amended schedules and [SOFA] . . . within the next 10 days.  If the Debtors believe their current form of schedules/sofa to be complete and accurate even in light of the Court's order, please make that express representation to me in response to this email.

[Trustee's Ex. A, p. 1].

39. On the same day, approximately three hours after the Trustee's counsel sent the foregoing e-mail, counsel for the Debtors replied as follows:

> I'm new to this . . . .  Are we required to make such amendments? I couldn't find where that's required (or even suggested).  Let me explain: If you are talking about Schedules A & B, I'm not sure that we can do better

---

[22] The applicable Federal Bankruptcy Rule only requires amended Schedules upon a bad faith conversion.  *See* Bankruptcy Rule 1019(5)(C)(i).  But, in the case at bar, the Trustee requested the Debtors to also file an amended SOFA due to the bad faith business dealings that the Debtors undertook while they were in Chapter 13.  *See* [Findings of Fact Nos. 29–37].

than what was sought and supplied to date. As for the SOFA: that does not purport to reflect assets held at the time of conversion anyway, although it does already show preconversion transactions (which may or may not constitute property of the converted estate). Because, Bankr[.] Rules required conversion schedules (regardless of the issue of bad faith), I believe that what we've submitted should suffice.[23] Let me know otherwise.

[*Id.*].

40. On the same day, approximately two hours after the Debtors' counsel's response, counsel for the Trustee replied:

> I take your response to mean that the Debtors are making the following representations:
>
> 1) They have accurately and comprehensively identified, on Schedule A and B, all property in which they had an interest (of whatever nature) as of [the Conversion Date];
>
> 2) They have comprehensively identified all exemptions they intend to claim in their property (such property being that in which they had an interest, of whatever nature, as of February 11, 2013 [i.e., the Conversion Date];
>
> 3) In light of the revised effective date as it relates to the determination of the Debtors' estate, there are no new items to disclose on the Statement of Financial Affairs (such as new items to include income 2011, 2012, and 2013 (ytd); pending litigation; repossessions since February 2012, gifts since February 2012, Losses since 2012, bankruptcy/debt counseling payments, transfers to creditors within 90 days prior to [the Conversion Date], all other transfers since Feb. 2011, and all other relevant information sought by the SOFA taking into consideration [the August 9, 2013 Order]).

---

[23] The Court finds that the Debtors' counsel was representing to the Trustee's counsel in his response to her e-mail the following: (a) because the Debtors—in their view—had filed accurate and complete Schedules (i.e., the 2/11 Amended Schedules and the 3/22 Amended Schedules [Findings of Fact Nos. 11 & 16]), they did not need to comply with the Trustee's counsel's request that the Debtors file newly amended Schedules and SOFA within 10 days; (b) what the Debtors had filed as of the date of the e-mail string between the Debtors' counsel and the Trustee's counsel on September 24, 2013 [*see* Findings of Fact Nos. 38 & 39]—specifically, the 2/11 Amended Schedules and the 3/22 Amended Schedules [*see* Findings of Fact Nos. 11 & 16]—was sufficient; and (c) the August 9, 2013 Order—which expressly set forth that the Debtors converted their case 7 from Chapter 13 to Chapter 7 in bad faith [Finding of Fact No. 27]—did not impose duties upon the Debtors to further amend their Schedules and SOFA.

> If this is not what your clients are intending to represent, please provide clarification.

[*Id.*].

41. Counsel for the Debtors neither responded to this e-mail nor filed any amended Schedules or SOFA on behalf of his clients. [*See* Doc. No. 175, p. 4, ¶ 9; Tape Recording, November 19, 2013 Hearing at 2:00:11–2:00:17 p.m.]. Thus, for purposes of fulfilling her duties as a Chapter 7 Trustee in the wake of the August 9, 2013 Order, the "live" Schedules and "live" SOFA that the Trustee scrutinized were the Original Schedule A, the 3/22 Amended Schedule B, the 3/22 Amended Schedule C, the Original Schedules D and E, the 2/11 Amended Schedule F, the 3/22 Amended Schedule G, the Original Schedule H, the 3/22 Amended Schedules I and J, and the Original SOFA (collectively, the "Live" Pleadings). [*See* Findings of Fact Nos. 2, 11 & 16].

## D.    Inaccuracies in the 3/22 Amended Schedules

42. The 3/22 Amended Schedules do not list all of the Debtors' interests in property as of the Conversion Date. [Tape Recording, November 19, 2013 Hearing at 2:23:00–2:23:09 p.m.; Doc. No. 175, p. 2, ¶ 7; *see also* Doc. Nos. 100 & 101]. In addition to outright omissions, there are inaccurate "low-ball" values placed on certain assets. [Tape Recording, November 19, 2013 Hearing at 2:23:10–2:23:15 p.m.; Doc. No. 175, p. 2, ¶ 7].

43. First, the 3/22 Amended Schedules B and C identified $20.00 relating to "Woodforest National Bank." [Trustee's Ex. B, pp. 15 & 20; Doc No. 100, p. 1; Doc. No. 101, p. 1; Doc. No. 175, p. 3, ¶ 7(a)]. However, as of the Conversion Date, the Debtors had <u>two</u>

<u>accounts</u> at Woodforest National Bank (the Woodforest Bank Accounts).[24]  [*See* Doc. No. 175, p. 3, ¶ 7(a); Trustee's Ex. E, pp. 1–10].  As of the Conversion Date, the account ending with 8997, which is in the name of only one of the Debtors (i.e., Ms. Reeves), had a balance of $2,034.29 [Trustee's Ex. E, pp. 1 & 4], and the account ending with 0769, which is in the name of the other Debtor (i.e., Mr. Reeves), had a balance of $637.79. [*Id.* at pp. 7 & 9].  Thus, as of the Conversion Date, the aggregate amount in the Woodforest Bank Accounts was $2,672.08 (i.e., $2,034.29 + $637.79 = $2,672.08).

44. The difference between the amount that the Debtors scheduled with respect to the Woodforest Bank Accounts on the 3/22 Amended Schedules and the actual amount that the Debtors had in the Woodforest Bank Accounts as of the Conversion Date is $2,652.08 (i.e., $2,672.08 - $20.00 = $2,652.08).  [*See* Finding of Fact No. 43].

45. Second, the 3/22 Amended Schedules B and C identified $15,000.00  relating to the Debtors' 2012 tax refund (the 2012 Tax Refund).  [Trustee's Ex. B, pp. 18 & 21; Doc. No. 100, p. 4; Doc. No. 101, p. 2; Doc. No. 175, p. 3, ¶ 7(d)].  However, the actual amount of the 2012 Tax Refund was $15,613.00.[25]  [Trustee's Ex. C, p. 6; Doc. No. 175, p. 3, ¶ 7(d)].

46. The difference between the amount that the Debtors scheduled with respect to the 2012 Tax Refund on the 3/22 Amended Schedules and the actual amount that they received is $613.00 (i.e., $15,613.00 - $15,000.00 = $613.00).  [*See* Finding of Fact No. 45].

---

[24] Indeed, the Original Schedule B and the 2/11 Amended Schedule B also failed to identify the <u>two</u> accounts at the Woodforest National Bank, and only identified $20.00 relating to "Woodforest National Bank." [Doc. No. 1, p. 9; Trustee's Ex. B, p. 7; Doc. No. 93, p. 1].

[25] The Court notes that the Debtors failed to disclose the 2012 Tax Refund on the 3/22 Amended Schedules B and C [*see* Trustee's Ex. C, pp. 7–14; Doc. Nos. 93 & 94], despite knowing the existence and amount of the 2012 Tax Refund as early as February 21, 2013.  The Court finds that the Debtors knew that they were entitled to receive $15,613.00—and not $15,000.00—as early as February 21, 2013 because Martin Consulting LP, the company who prepared the Debtors' tax returns, gave the Debtors instructions for filing the 2012 Federal Form 1040, which was dated February 21, 2013.  *See* [Trustee's Ex. C, p. 1] ("You will receive a refund of **$15,613.00**.") (emphasis added).

47. Third, the 3/22 Amended Schedules B and C identified the 2010 Dodge Truck, and the Debtors valued this vehicle at $15,000.00.[26] [Doc. No. 175, p. 3, ¶ 7(e); Trustee's Ex. A, pp. 18 & 21; Doc. No. 100, p. 4; Doc. No. 101, p. 2]. In order to fully exempt the 2010 Dodge Truck, the Debtors utilized the "tools of the trade" exemption and claimed a $4,350.00 exemption under § 522(d)(6)[27] on the 3/22 Amended Schedules.[28] [Doc. No. 101, p. 2]. They did so despite Mr. Reeves testifying at the April 4, 2013 continued meeting of creditors that he had ceased to do business in January or February of 2013 [Finding of Fact No. 32]. [Doc. No. 175, p. 3, ¶ 7(e)]. Stated differently, the Debtors were claiming a "tools of the trade" exemption under § 522(d)(6) even though Mr. Reeves ceased to do business in January or February of 2013—several weeks before filing the 3/22 Amended Schedules.

48. Fourth, the 3/22 Amended Schedule B failed to disclose the refund that the Debtors received from the Chapter 13 Trustee in the amount of $4,625.49 (the Chapter 13 Refund). [See Trustee's Ex. B, pp. 15–19; Doc. No. 100; Doc. No. 175, p. 3, ¶ 7(c); see also Finding of Fact No. 14].

---

[26] The Court notes that the Debtors failed to identify the 2010 Dodge Truck on the 2/11 Amended Schedules B and C [see Trustee's Ex. B, pp. 7–14; Doc. Nos. 93 & 94], even though they had purchased this vehicle after receiving the Retroactive Payment in September of 2011 [Finding of Fact No. 33].

[27] Section 522(d)(6) expressly states that among the list of interests that may be exempted under § 522(b)(2), are a "debtor's aggregate interest in any property, not to exceed $2,300 in value . . . in tools, of the trade of the debtor or the trade of a dependent of the debtor." 11 U.S.C. § 522(d)(6).

[28] In addition to claiming a $4,350.00 exemption under § 522(d)(6) for the 2010 Dodge Truck on the 3/22 Amended Schedules, the Debtors also claimed a $3,450.00 exemption pursuant to § 522(d)(2), and a $7,200.00 exemption pursuant to § 522(d)(5) [Doc. No. 101, p. 2], for a total claimed exemption of $15,000.00 (i.e., $4,350.00 + $3,450.00 + $7,200.00 = $15,000.00) with respect to the 2010 Dodge Truck—the full amount of the Debtors' interest in the 2010 Dodge Truck as disclosed on the 3/22 Amended Schedule B [Doc. No. 100, p. 4].

Section 522(d)(2) expressly states that among the list of interests that may be exempted under § 522(b)(2), are a "debtor's interest, not to exceed $3,540 in value, in one motor vehicle." 11 U.S.C. § 522(d)(2).

Section 522(d)(5) expressly states that among the list of interests that may be exempted under § 522(b)(2), are a "debtor's aggregate interest in any property, not to exceed in value $1,150 plus up to $10,825 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5).

49. Finally, the 3/22 Amended Schedules B and C identified $8.00 relating to "Houston Police Federal Credit Union" (the HPFCU Account). [Trustee's Ex. B., pp. 15 & 20; Doc. No. 100, p. 1; Doc. No. 101, p. 1; Doc. No. 175, p. 3, ¶ 7(b)]. However, as of the Conversion Date, the HPFCU Account ending in member number 7300—which is in the name of one of the Debtors (i.e., Ms. Reeves)—had a balance of $17.07. [*See* Doc. No. 175, p. 3, ¶ 7(b); Trustee's Ex. E, p. 15].

50. The difference between the amount that the Debtors scheduled with respect to the HPFCU Account on the 3/22 Amended Schedules and the actual amount that the Debtors had in the HPFCU Account as of the Conversion Date is $9.07 (i.e., $17.07 - $8.00). [Tape Recording, November 19, 2013 Hearing at 2:09:52–2:10:16 p.m.]. The Trustee testified that she does not believe this amount to be a material omission; however, she objected to this specific inaccuracy because she did not want to waive her objection to any balance relating to this particular account.[29] [*Id.* at 2:09:52–2:10:16 p.m.].

### III. RELIEF REQUESTED

**A.    The Objection/Motion, the Debtors' Response, and the Arguments Made in Support Thereof**

Having reviewed the "Live" Pleadings, [*see* Finding of Fact No. 41], and recognizing that the Debtors were not going to voluntarily make any further amendments, the Trustee filed the Objection/Motion on October 11, 2013. [Doc. No. 175]. In the Objection/Motion, the Trustee: (1) objects to several exemptions claimed by the Debtors; (2) seeks an order requiring the

---

[29] The Court understands why the Trustee objected, particularly given the Debtors' bad faith conduct during their Chapter 13 proceeding and their other significant inaccuracies on the 3/22 Amended Schedules B and C. *See* [Findings of Fact Nos. 42–50]. The Trustee had every right to be skeptical about just exactly what the Debtors' relationship was with HPFCU. After all, they had only listed <u>one</u> of two accounts at Woodforest National Bank. [Finding of Fact No. 43].

Debtors to turn over certain funds; and (3) seeks an order compelling the Debtors to file an amended SOFA.[30]  [*Id.* at pp. 4–5, ¶¶ 10–16; *see* Doc. No. 155].

Specifically, the Trustee seeks the following relief set forth immediately below.  [*See* Doc. No. 175, pp. 4–5, ¶¶ 11–15].  First, the Trustee requests turn over of $2,652.08 (i.e., the aggregate balance of the Woodforest Bank Accounts as of the Conversion Date minus the $20.00 exemption claimed on the 3/22 Amended Schedules) [*see* Finding of Fact No. 44]; and the Trustee objects to any attempt by the Debtors to exempt any amount over $20.00 with respect to the Woodforest Bank Accounts because the Debtors failed to disclose the full amount in the Woodforest Bank Accounts on the 3/22 Amended Schedules. [Doc. No. 175, p. 4, ¶ 11; *see also* Finding of Fact No. 43].

Second, the Trustee requests turn over of $613.00 (i.e., the actual amount of the 2012 Tax Refund that the Debtors received—$15,613.00—minus the $15,000.00 exemption claimed on the 3/22 Amended Schedules) [*see* Finding of Fact No. 46]; and the Trustee objects to any attempt by the Debtors to exempt any amount of the 2012 Tax Refund over $15,000.00 because the Debtors failed to disclose the full amount of the 2012 Tax Refund on the 3/22 Amended Schedules. [Doc. No. 175, p. 5, ¶ 14; *see also* Finding of Fact No. 45].

Third, the Trustee requests that this Court disallow the "tools of the trade" exemption claimed by the Debtors with respect to the 2010 Dodge Truck on the 3/22 Amended Schedules (i.e., $4,350.00) based upon the fact that Mr. Reeves had ceased doing business in January or February of 2013 and therefore could not (as a matter of law) have been using the 2010 Dodge Truck as a tool of any trade at the time the 3/22 Amended Schedules were filed.  [Doc. No. 175, p. 5, ¶ 15; *see* Finding of Fact No. 47].

---

[30] [*See* 14 n.22].

Fourth, the Trustee requests turn over of $4,625.49 (i.e., the amount of the Chapter 13 Refund); and the Trustee objects to any attempt by the Debtors to exempt any amount of the Chapter 13 Refund because the Debtors failed to disclose this refund on the 3/22 Amended Schedules.[31] [Doc. No. 175, p. 5, ¶ 13; *see* Finding of Fact No. 48].

Fifth, the Trustee requests turn over of $9.07 (i.e., the balance of the HPFCU Account as of the Conversion Date minus the $8.00 exemption claimed on the 3/22 Amended Schedules) [*see* Finding of Fact No. 50]; and the Trustee objects to any attempt by the Debtors to exempt any amount over $8.00 with respect to the HPFCU Account because the Debtors failed to disclose the full amount in the HPFCU Account on the 3/22 Amended Schedules. [Doc. No. 175, p. 4–5, ¶ 12; *see also* Findings of Fact No. 49].

Finally, in the Objection/Motion, the Trustee is requesting additional relief (i.e., that the Debtors be required to file an amended SOFA) because she asserts that there are a variety of responses in the Original SOFA that must be amended by the Debtors. [Doc. No. 175, p. 5, ¶ 16]. For example, the Debtors transferred property to third parties within relevant look-back time periods prior to the Conversion Date, and the Trustee requests to have the Debtors' representations, under penalty of perjury, related to these transfers. [*Id.*]. Additionally, the Debtors' responses (including the truthfulness and sufficiency of the responses) will be relevant in the Trustee's pending discharge action against the Debtors.[32] [*Id.*].

---

[31] The Trustee was initially willing to request a reduced amount upon the Debtors' production of proper documentation that a specific portion of the Chapter 13 Refund was earned after the Conversion Date—as the Debtors contend—but the Debtors have provided no documentation to support their position. [Doc. No. 175, p. 3, ¶ 7(c) & p. 5, ¶ 13].

[32] The Trustee initiated adversary proceeding number 13-03204 on August 19, 2013, seeking to bar the Debtors' discharge pursuant to §§ 727(a)(3), (a)(4)(D), (a)(5). [Adv. Doc. No. 1]. Section 727(a)(3) provides that the Court shall grant the Debtors a discharge, unless the Debtors "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the [Debtors'] financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." Section 727(a)(4)(D) provides that the Court shall grant the Debtors a

On October 20, 2013, the Debtors filed a Response to the Objection/Motion (the Response). [Doc. No. 178]. The Response contains several unwarranted satirical statements, criticizing the Trustee and her counsel. [*See* Doc. No. 178]. By way of example, in paragraph 6 of the Response, the Debtors, through their attorney, state:

> Debtors laughingly admit paragraph #12 [of the Objection/Motion] which should tell this Court *everything* it needs to know about the prosecution of this case, and about the conduct of the Trustee's counsel. Rhetorically, does the Trustee's counsel *really* intend to show that the Debtors *intentionally* hid $9.07 from the Trustee? Seriously? Has this case degraded to such a wolf-pack mentality that this Court will simply preside of the tearing apart of the carcasses of these folks? It appears that the Debtor's punishment for their alleged fraud is that they will pay everyone back . . . and that they will also pay the "wolf-pack's" lawyers for the privilege of not being able to escape their bankruptcy filing.

[*Id.* at pp. 2–3, ¶ 6]. This language reflects that the Debtors and their counsel believe that the Trustee unnecessarily prepared and prosecuted the Objection/Motion. Indeed, the Debtors state the following in paragraph 2 of the Response:

> In subparagraph d [of the Objection/Motion,] the Trustee further states that the Debtors listed as tax refund of $15000.00 when it was actually $15,613.00–that's another huge four percent (4%) difference! The remedy, however, is *not* to run up fees in violation of the Rules of Professional Responsibility and Rule 9013, but instead to demand turnover of the un-exempted excess. No demand has ever been made from the Trustee for this un-exempted tax refund amount. Consequently, no attorney's fees should be awarded to the Trustee's counsel for failing to demand directly for what they are now seeking by court order.[33]

[*Id.* at pp. 1–2, ¶ 2]. From the tone and the words that the Debtors and their counsel chose to use in the Response, it is clear that the Debtors and their counsel do not take the Objection/Motion

---

discharge, unless the Debtors "knowingly and fraudulently, in or in connection with the case . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the [Debtors'] property or financial affairs." Section 727(a)(5) provides that the Court shall grant the Debtors a discharge, unless the Debtors "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the [Debtors'] liabilities." The Debtors' complete and accurate answers to many of the items in the amended SOFA are certainly relevant to this adversary proceeding and could well affect the Trustee's prosecution of this suit.

[33] The Court disagrees with the Debtors' assertion that the Trustee should have first made a demand before filing the Objection/Motion. The Court subsequently discusses this issue in Section V(B).

seriously. Indeed, the glib tone of the Response underscores that the Debtors are continuing to exhibit the same disrespectful approach to the bankruptcy process that they have shown during their Chapter 13 case [*see* Findings of Fact Nos. 17, 18, 19, 21, 23, 24, 25, 27, 28 & 29–37]; and unfortunately, their counsel has joined them in this attitude.

**B.    The Hearing on the Objection/Motion**

On November 19, 2013, this Court held a hearing on the Objection/Motion (the Hearing). The Debtors, the Debtors' counsel, the Trustee, the Trustee's counsel, and counsel for Thomas Ed Cole (Cole)—a creditor and party-in-interest who supports the Objection/Motion—appeared at the Hearing. Counsel for the Debtors, after making his appearance, stipulated to all of the factual averments made in the Objection/Motion and informed the Court that he wanted "to go straight to argument." [Tape Recording, November 19, 2013 Hearing at 11:15:25–11:15:32 a.m. & 1:39:23–1:39:36 p.m.]. The Trustee's counsel, on the other hand, adduced testimony from the Trustee in support of the Objection/Motion. This Court finds that her testimony was very credible; accordingly, the Court gives her testimony substantial weight. Counsel for the Debtors attempted to call a rebuttal witness, but this Court sustained the objection of the Trustee's counsel because the Debtors' counsel did not file a witness list pursuant to Bankruptcy Local Rule 9013-2. [*Id.* at 2:21:00–2:22:37 p.m.]. The Court also admitted exhibits A, B, C, D and E of the Trustee without any objections from counsel for the Debtors. [*Id.* at 1:37:39–1:37:38 p.m.].

In closing arguments, counsel for the Trustee asserted that because there was no property at all listed in the Final Report [*see* Finding of Fact No. 13], the Debtors are required by Bankruptcy Rule 1019(5)(C)(i) to amend their Schedules to disclose property "acquired after the [Petition Date] but before [the Conversion Date]." [Tape Recording, November 19, 2013

hearing at 2:52:31–2:53:03; *see also* Doc. No. 175, p. 4, ¶ 8; Trustee's Ex. D; Doc. No. 97]. The Trustee then emphasized that the Debtors had never amended their Schedules in compliance with Rule 1019(5)(C)(i).   [Tape Recording, November 19, 2013 hearing at 2:52:31–2:53:03]. Moreover, she argued that the amended Schedules that the Debtors have filed (i.e., the 3/22 Amended Schedules B and C) were strewn with inaccuracies and omissions.   [Finding of Fact No. 42].

For his part, counsel for the Debtors asserted that Bankruptcy Rule 1019(5)(C)(i) does <u>not</u> apply in the case at bar.   [Tape Recording, November 19, 2013 Hearing at 2:43:15–2:44:48 p.m.].   Moreover, he asserted that the 2/11 Amended Schedules and the 3/22 Amended Schedules were accurate and that the Trustee should not have filed the Objection/Motion. Counsel for the Debtors did, however, stipulate that to the extent that the value of the Debtors' interest in certain property is more than what they claimed as exempt in the 3/22 Amended Schedules, the Debtors should not receive an exemption above the amount they claimed to be exempt on the 3/22 Amended Schedules.[34]

After hearing closing arguments from the Trustee's counsel, Cole's counsel, and counsel for the Debtors, the Court took the matter under advisement.

**C.    The Debtors' Brief with Respect to 11 U.S.C. § 707(b)(4)(B) and Newly Amended Schedules B and C**

Approximately eight hours after the Hearing, the Debtors filed (1) a Brief with Respect to 11 U.S.C. § 707(b)(4)(B) (the Brief) [Doc. No. 186]; and (2) Amended Schedules B and C (the 11/19 Amended Schedules) [Doc. No. 187].

1.   <u>The Brief</u>

---

[34] Despite this stipulation, the Debtors are nevertheless now trying to exempt $332.00 related to the Woodforest Bank Accounts instead of the $20.00 they claimed to be exempt on the 3/22 Amended Schedules.   *See* Section III(C)(2).

24

In the Brief, counsel for the Debtors corrected his argument at the Hearing regarding Bankruptcy Rule 1019(5)(C)(i)[35], and informed the Court that the "Debtors and their counsel now agree that Rule 1019 normally does not require conversion schedules listing post-petition property *except if* Section 348(f)(2) applies" [Doc. No. 186, p. 1, ¶ 2]—and that here, this section does apply. "Notwithstanding this fact," the Debtors reiterate that they filed the 2/11 Amended Schedules and the 3/22 Amended Schedules, and that the amendments contained therein are accurate. [*Id.* at ¶ 3].

In the Brief, the Debtors also request that no penalties be assessed against their attorney pursuant to § 707(b)(4)(B)(i)[36] regarding the discrepancies on the 3/22 Amended Schedules relating to the Woodforest Bank accounts, the 2012 Tax Refund, and the Chapter 13 Refund.[37] [Doc. No. 186, pp. 2–4]. This request is made despite the fact that the Trustee has not requested this Court to assess such penalties.

Finally, the Debtors argue in the Brief that pursuant to § 704(a)(7), the Trustee was required to inform the Debtors' counsel of the discrepancies in the 3/22 Amended Schedules because they requested "information concerning the estate and the estate's administration" in their counsel's response to the Trustee's e-mail on September 24, 2013. [*Id.* at pp. 4–5, ¶ 8; *see also* § 704(a)(7)]. Specifically, the Debtors assert that they requested "information concerning the estate and the estate's administration" when their counsel responded to the Trustee's counsel's e-mail with the following language: "Because, Bankr[.] Rules required conversion schedules (regardless of the issue of bad faith), I believe that what we've submitted should

---

[35] *See* [Section III(B) & 34 n.49].

[36] Section 707(b)(4)(B)(i) provides that "if the court finds that the attorney for the [D]ebtor[s] violated [Bankruptcy Rule] 9011, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order the assessment of an appropriate civil penalty against the attorney for the [D]ebtor[s]."

[37] The Court notes that, in the Brief, the Debtors addressed neither of the discrepancies on the 3/22 Amended Schedules related to the HPFCU Account and the 2010 Dodge Truck. *See* [Doc. No. 186].

suffice. **Let me know otherwise.**" [Trustee's Ex. A, p. 1; *see* Finding of Fact No. 39] (emphasis added).

2. The 11/19 Amended Schedules[38]

The Debtors filed the 11/19 Amended Schedules, absent leave of the Court to do so. By filing the 11/19 Amended Schedule B, the Debtors attempt to:

(i) increase the value of the Debtors' interest in the Woodforest Bank Accounts from $20.00—as reflected on the 3/22 Amended Schedule B—to $2,672.08 [*Compare* Doc. No. 100, p. 1, *with* Doc. No. 187, p. 1];

(ii) increase the value of the Debtors' interest in the HPFCU Account from $8.00—as reflected on the 3/22 Amended Schedule B—to $17.07 [*Compare* Doc. No. 100, p. 1 *with* Doc. No. 187, p. 1];

(iii) add the following property, "Chapter 14 Refund (pre-conversion payments) ($4625.29 - $2200 = $2,425.29),"[39] valued at $2,425.49 [Doc. No.187, p. 3];

(iv) replace the 2010 Dodge Truck—which was listed on the 3/22 Amended Schedule B with a value of $15,000.00[40]—with a $9,000.00 interest in the following property: "(2010 Dodge Truck was traded post-conversion to another truck, 2005 Dodge Ram 1500)[.] Post-petition creditor is "Credit Acceptance" and current is approximately $13,000.00[.]"[41]  (the 2005 Dodge Ram) [*Compare* Doc. No. 100 *with* Doc. No. 187, p. 187]; and

---

[38] The only Schedules that the Debtors amended on 11/19 were Schedules B and C.  *See* [Doc. No. 187].  In Section V(D), the Court subsequently discusses why the 11/19 Amended Schedules should be stricken and disallowed.

[39] The Court presumes that the Debtors meant to identify the Chapter **13** Refund, rather than the "Chapter 14 Refund."

[40] *See* [Finding of Fact No. 47].

[41] This disclosure is verbatim from the 11/19 Amended Schedule B.  It is clear that a word is missing.  The Court believes that the missing word is "balance," and that the intended disclosure should read as follows: "(2010 Dodge

26

(v) increase the value of the Debtors' interest in the 2012 Tax Refund from $15,000.00—as reflected on the 3/22 Amended Schedule B—to $15,613.00 [*Compare* Doc. No. 100, p. 4 *with* Doc. No. 187, p. 4].

And, by filing the 11/19 Amended Schedule C, the Debtors attempt to:

(i)     increase the amount of their exemption with respect to the Woodforest Bank Accounts from $20.00—as reflected on the 3/22 Amended Schedule C—to $332.00 [*Compare* Doc. No. 101, p. 1 *with* Doc. No. 187, p. 6];

(ii)    remove their claimed exemptions on the 3/22 Amended Schedules relating to the 2010 Dodge Truck (i.e., a total of $15,000.00)—$3,450.00 pursuant to § 522(d)(2), $4,350.00 pursuant to § 522(d)(6), and $7,200.00 pursuant to § 522(d)(5) [*see* Doc. No. 101, p. 2]; and

(iii)   claim an exemption in the 2005 Dodge Ram that they acquired by trading in the 2010 Dodge Truck [*see* Doc. No. 187, p. 7].

By filing the 11/19 Amended Schedules, the Debtors seek to correct the inaccuracies identified in the Objection/Motion over which the parties litigated at the Hearing—all in an effort to avoid the consequences of their skullduggery brought to this Court's attention by the Trustee and to now exempt both the $332.00 related to the Woodforest Bank Accounts and the 2005 Dodge Truck. For the reasons subsequently discussed herein, this approach will not succeed.

## IV. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY TO ENTER FINAL ORDERS

### A.     Jurisdiction

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)

---

Truck was traded post-conversion to another truck, 2005 Dodge Ram 1500)[.]  Post-petition creditor is "Credit Acceptance" and current **balance** is approximately $13,000.00[.]"

because it affects the administration of this Chapter 7 estate. Further, it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (E) because it is a contested matter to determine the allowance or disallowance of exemptions from property of the estate and the remedy sought is an order to turn over property of the estate.[42] Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

**B.   Venue**

Venue is proper pursuant to 28 U.S.C. § 1408(1).

**C.   Constitutional Authority to Enter Final Orders**

Having concluded that this Court has jurisdiction over this contested matter, the Court nevertheless notes that *Stern v. Marshall*, 131 S. Ct. 2594 (2011) sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. This Court must therefore determine whether it has constitutional authority to sign final orders in the dispute at bar—one order relating to the Trustee's objections to the Debtors' claimed exemptions on the 3/22 Amended Schedules, one order relating to the Trustee's request for turn over of nonexempt property, and one order relating to the Trustee's request to compel the Debtors to file an amended SOFA. The Court concludes that it does for the following reasons.

---

[42] An adversary proceeding is typically necessary for turnover of money or property. However, Bankruptcy Rule 7001(1) expressly states that a proceeding to compel the Debtors to deliver property to the Trustee is not an adversary proceeding. FED. R. BANKR. P. 7001(1) ("The following are adversary proceedings : (1) a proceeding to recover money or property, **other than a proceeding to compel the debtor to deliver property to the trustee** . . . .") (emphasis added). Here, the Trustee is requesting that the Debtors be ordered to turn over nonexempt property totaling $12,249.64—specifically, the sum of (a) $2,652.08 related to the Woodforest Bank Accounts; (b) $613.00 related to the 2012 Tax Refund; (c) $4,350.00 related to the Debtors' claimed exemption under § 522(d)(6) for the 2010 Dodge Truck; (d) $4,625.49 related to the Chapter 13 Refund; and (e) $9.07 related to the HPFCU Account. [*See* Doc. No. 175, pp. 4–5, ¶¶ 10–15]. Thus, the Trustee is not required to file an adversary proceeding; the Objection/Motion passes procedural muster.

1. <u>The First Reason: The facts in *Stern* are distinguishable from the facts in the case at bar</u>

The facts in the case at bar are easily distinguishable from those in *Stern*. In *Stern*, the debtor filed a counterclaim against a creditor who had filed a proof of claim. The debtor's counterclaim was based solely on state law; there was no Code provision providing a basis for the counterclaim. Moreover, the resolution of the counterclaim was not necessary to adjudicating the validity of the claim of the creditor. Under these circumstances, the Supreme Court held that the bankruptcy court lacked constitutional authority to enter a final judgment on the debtor's counterclaim.

In the case at bar, on the other hand, there is no state law involved. The Objection/Motion is based upon express provisions of the Code and an express Bankruptcy Rule—11 U.S.C. §§ 348(f)(2), 521(a)(3), 521(a)(4), 541, 542 and Bankruptcy Rule 1019(5)(C). Thus, this dispute is easily distinguishable from the suit in *Stern*, and the Court concludes that *Stern v. Marshall* is inapplicable in this dispute. The Court therefore has the constitutional authority to enter final orders in this dispute.

2. <u>The Second Reason: Even if *Stern* applies, the "Public Rights" Exception articulated in *Stern* applies in the case at bar</u>

In the alternative, even if *Stern* somehow applies, this Court concludes that the one exception articulated in *Stern* by the Supreme Court applies—specifically, that this Court may enter a final order over essential bankruptcy matters under the "public rights" exception. Under *Thomas v. Union Carbide Agric. Prods. Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable

distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Cent. Va. Cmty. Coll. v. Katz,* 546 U.S. 356, 363–64 (2006); *see N. Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern,* 131 S. Ct. at 2614, n.7 ("We noted [in *Granfinanciera*] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

Disputes that are integrally bound up in the claims adjudication process—and thus involve the exercise of the Bankruptcy Court's *in rem* jurisdiction over the estate—are part of the "public rights" exception. *See Stern,* 131 S. Ct. at 2618 (noting that when determining whether Congress may bypass Article III, "the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims adjudication process"). Disputes over rights created by the Bankruptcy Code itself as part of the public bankruptcy scheme also fall within the "public rights" exception. *See Thomas*, 473 U.S. at 593 (allowing non-Article III adjudication of rights created by a public regulatory scheme). The bankruptcy court may enter final judgments in these matters.

In the case at bar, the key issues before this Court arise from a dispute over whether: (1) certain property is exempt; (2) certain property is property of the Debtors' estate, which the Debtors must turn over to the Trustee; (3) the Debtors are required to file amended Schedules listing property as of the Conversion Date; and (4) the Debtors are required to file an amended SOFA. The right to exempt property from the bankruptcy estate is governed by § 522; the determination of property of the estate (which must be turned over to the Trustee) is governed by §§ 541 and 542; the requirement to file amended Schedules as of the Conversion Date is

governed by § 348(f)(2) and Bankruptcy Rule 1019(5)(C)(i); and the requirement to file an amended SOFA is governed by this Court's equitable powers set forth in § 105(a).[43]   These issues are central to the public bankruptcy scheme, as they relate to both the exercise of exclusive jurisdiction over the property of the Debtors' estate (because before property can become exempt, it is property of the estate), and the equitable distribution of that property among the Debtors' creditors.

For all of these reasons, this Court has the constitutional authority to enter final orders on the Objection/Motion.

### V. CONCLUSIONS OF LAW

The Debtors made several meritless assertions in the Response, at the Hearing, and in the Brief.  The Court will address these issues first, and will thereafter address why the Trustee is entitled to the relief she requests in the Objection/Motion.  The specific assertions made by the Debtors, with which this Court disagrees, are as follows:

(a) In September of 2013, when the Trustee's counsel inquired as to whether the Debtors were going to file amended Schedules, [*see* Findings of Fact Nos. 38 & 40], they were not required to amend their Schedules and that the Schedules they had filed—the 2/11 Amended Schedules and the 3/22 Amended Schedules—were sufficient [*see* Finding of Fact No. 39];

(b) The Trustee was required to first make a demand for turnover of property of the estate

---

[43] Section 105(a) sets forth that: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  In the case at bar, the only SOFA filed by the Debtors is the Original SOFA [Finding of Fact No. 2].  Yet, one of the Debtors (i.e., Mr. Reeves) started his own business after the Petition Date, and Mr. Reeves shut down this business before the Conversion Date.  [Finding of Fact No. 31].  Given that this Court has already found that the Debtors' conversion from Chapter 13 to Chapter 7 was in bad faith [Findings of Fact Nos. 26 & 27], and that the Trustee has initiated an objection to discharge against the Debtors based upon § 727(a), [*see* 22 n.32], this Court concludes that it should exercise its powers under § 105(a) to require the Debtors to file an amended SOFA.

before filing the Objection/Motion;

(c) The Trustee was required to specifically spell out to the Debtors the inaccuracies in the
3/22 Amended Schedules before filing the Objection/Motion; and

(d) By filing the 11/19 Amended Schedules, these most recently filed Schedules, rather than
the 3/22 Amended Schedules B and C, govern the Debtors' exemption rights.[44]

**A.    Contrary to the Debtors' Assertion at the Hearing, the Debtors were Required to
Timely File Complete and Accurate Bankruptcy 1019(5)(C)(i) Amended Schedules,
and They Failed to Do So**

The "Live" Pleadings consist of the Original Schedule A, the 3/22 Amended Schedule B,

the 3/22 Amended Schedule C, the Original Schedules D and E, the 2/11 Amended Schedule F,

the 3/22 Amended Schedule G, the Original Schedule H, the 3/22 Amended Schedules I and J,

and the Original SOFA [Finding of Fact No. 41]; and, the Trustee filed the Objection/Motion

based upon the "Live" Pleadings. *See* [Doc. No. 175]. The 3/22 Amended Schedules do not list

all of the Debtors' interests in property as of the Conversion Date. [Finding of Fact No. 42].

Indeed, in addition to outright omissions of assets, there are inaccurate "low-ball" values placed

on certain assets. [*Id.*]. For the reasons set forth below, the Court concludes that the Debtors

failed to file amended Schedules as required by Bankruptcy Rule 1019(5)(C)(i). Indeed, by

failing to do so, the Debtors also failed to comply with Bankruptcy Local Rule 1019-1[45],

Bankruptcy Rule 4002(a)(4)[46], and § 521(a)(3).[47] Thus, the very glib and indignant tone of the

---

[44] The Debtors have not expressly stated that the 11/19 Amended Schedules should govern their exemption rights.
However, by filing them, that is the position that they are now necessarily taking.

[45] Bankruptcy Local Rule 1019-1 expressly required the Debtors, within 14 days after entry of an order converting
their case from Chapter 13 to Chapter 7, to file: "(1) supplemental schedules itemizing changes from the original
schedules in property of the estate and in creditor lists, or (2) a statement that there are no changes." BLR 1019-1.

[46] Bankruptcy Rule 4002(a)(4) expressly states that the Debtors shall "cooperate with the [T]rustee in the
preparation of an inventory, the examination of proofs of claim, and the administration of the estate."   FED. R.
BANKR. P. 4002(a)(4).

Debtors, expressed through their counsel in the written Response and in oral argument at the Hearing, is not only unprofessional; it is entirely unjustified.

        1.   <u>The Debtors Failed to Comply with Bankruptcy Rule 1019(5)(C)(i)</u>

The Debtors wholly failed to comply with Bankruptcy Rule 1019(5)(C)(i). This Rule provides that:

> Unless the court orders otherwise, if a . . . chapter 13 case is converted to chapter 7 after confirmation of a plan, the debtor **shall** file: (i) a schedule of property not listed in the final report and account acquired after the filing of the petition but before conversion, **except if the case is converted from chapter 13 to chapter 7 and § 348(f)(2) does not apply.**

FED. R. BANKR. P. 1019(5)(C)(i) (emphasis added). Based on the plain language of Bankruptcy Rule 1019(5)(C)(i), this Court concludes that the Debtors were required to file a schedule of property, not listed in the Final Report, acquired after the Petition Date but before the Conversion Date because: (i) the Debtors converted their case from Chapter 13 to Chapter 7 after the Chapter 13 plan was confirmed [*see* Findings of Fact Nos. 3 & 10]; and (ii) the exception set forth in Bankruptcy Rule 1019(5)(C)(i) does not apply in the case at bar. Specifically, the Court finds that the exception does not apply because: (i) the Debtors' case was converted from Chapter 13 to Chapter 7 [Finding of Fact No. 10]; and (ii) this Court found that **§ 348(f)(2) does, in fact, apply** because the Debtors converted their case in bad faith[48] [Finding of Fact No. 27].

In closing arguments at the Hearing, counsel for the Debtors asserted that the Debtors were <u>not</u> required to file amended Schedules pursuant to Bankruptcy Rule 1019(5)(C)(i).[49] In

---

[47] Section 521(a)(4) requires the Debtors to "cooperate with the [T]rustee as necessary to enable the [T]rustee to perform the [T]rustee's duties under this title." 11 U.SC. § 521(a)(4).

[48] *See also* [Findings of Fact Nos. 29–37].

[49] The Court notes that the arguments of the Debtors' counsel at the Hearing regarding Bankruptcy Rule 1019(5)(C)(i) were confusing. Specifically, counsel for the Debtors interpreted this Rule to mean that the Debtors were <u>not</u> required to file Bankruptcy Rule 1019(5)(C)(i) Amended Schedules because of his interpretation of § 348(f)(2). *See* [Tape Recording, November 19, 2013 Hearing at 2:43:15–2:44:48 p.m.]. Subsequently, counsel for the Debtors realized that his interpretation of Rule 1019(5)(C)(i) and  § 348(f)(2) at the Hearing was simply

the Brief, however, counsel for the Debtors corrected the argument he made at the Hearing regarding Bankruptcy Rule 1019(5)(C)(i), and the "Debtors and their counsel now agree that Rule 1019 normally does not require conversion schedules which list post-petition property *except* if Section 348(f)(2) applies." [Doc. No. 186, p. 1, ¶ 2]. Therefore, it appears that the Debtors' <u>current</u> position is that they were required to file amended Schedules pursuant to Bankruptcy Rule 1019(5)(C)(i). While it is now heartening that the Debtors acknowledge that under Rule 1019(5)(C)(i), they are in fact required to file amended Schedules reflecting their financial condition on the Conversion Date, the Debtors failed to file complete and accurate amended Schedules required by this Rule until <u>after</u> the Trustee filed the Objection/Motion and this Court held the Hearing. *See* [Doc. No. 187]. Thus, despite the admission of the Debtor's counsel after the Hearing that they were required to amended Schedules pursuant to file Bankruptcy Rule 1019(5)(C)(i) (hereinafter referred to as: Bankruptcy Rule 1019(5)(C)(i) Schedules), the Debtors timely failed to do so.[50]

### 2. The Debtors Failed to Comply with Bankruptcy Local Rule 1019-1

Attorneys practicing in this Bankruptcy Court should be familiar with and adhere to the Bankruptcy Local Rules of the Southern District of Texas. *See In re Zuniga*, 322 B.R. 760, 774 (Bankr. S.D. Tex. 2005). Bankruptcy Local Rule 1019-1 requires debtors to either file "supplemental schedules itemizing changes from the original schedules in property of the estate

---

wrong. Thus, after the Hearing, the Debtors' counsel filed a Brief, admitting his error and affirmatively stating that Rule 1019(5)(C)(i) does indeed apply. *See* [Section III(C)(1).].

[50] The 11/19 Amended Schedules, which were filed only <u>after</u> the Trustee filed the Objection/Motion and only <u>after</u> the Hearing, appear to be almost complete and accurate, but there is still one very glaring problem. *See* [Doc. No. 187]. The Debtors' counsel stipulated at the Hearing that the Debtors could not exempt more than what they claimed as exempt in the 3/22 Amended Schedules [Tape Recording, November 19, 2013 Hearing at 2:31:00–2:32:18 p.m.]. Despite this stipulation, in the 11/19 Amended Schedule C, the Debtors are now trying to exempt $332.00 with respect to the Woodforest Bank Accounts, even though they only claimed a $20.00 exemption in the 3/22 Amended Schedules [Finding of Fact No. 43].